181110, Peter L. Knox v. Vanguard Group, Inc. et al. Thanks.  My name is Michael Markoff. I represent the plaintiff, Peter L. Knox, under power of attorney, as attorney-in-fact for Margaret Knox. May I reserve two minutes for a public comment? Yes. Thank you. Margaret Knox, whose name this case has brought, is now 99 years old. She resides in an assisted living facility in Ohio. When she was 70, she did what many people who are aging do, and I'm getting there myself, and that is to execute a durable power of attorney for an adult child in expectation of the time when the parent is not going to be able to act on her own behalf. The power of attorney was granted to Peter Knox as a tax attorney at the time he was practicing in Massachusetts. He's still in Massachusetts. He's since retired. And it was renewed, replaced several times. The last durable general power of attorney was issued in 2009. By that time, Kenneth Knox, Margaret Knox's husband... Counsel, I don't mean to be rude, but you've only got limited time. Give us credit for having read the briefs. We understand the background. Thank you, and I apologize for that. But let me get to what I think is the crux of this case, and that has to do with how the funds at issue were finally released and what that means. The funds were released after a three-year freezing, and after this lawsuit was filed, they were finally released in December of 2015. What keeps this case going is plaintiff's claim for damages, but the fund itself was released at the end of December of 2015. Now, the fund was released after Vanguard, through its attorney, said, here, if you do X, Y, and Z, we will release the funds. Counsel, do you agree that individual state laws govern general durable powers of attorney that are effective in their respective states? I think I do, yes. I don't have any difficulty with that concept. So, Vanguard is a national company? Sure. Why should Vanguard rely upon a power of attorney from a particular state when all the states could be different? Why is it unreasonable for them to come up with their own forms? I'm going to evade the question slightly because that's not the issue in the case. We know from the release of the funds in December of 2015 that Vanguard does accept powers of attorney from states. In fact, it accepted the power of attorney at issue in this case. So, there's no question about Vanguard's acceptance of this particular form. Vanguard may have had the right to accept the power of attorney in this case. But its basic right, as I understand it, is that it can require that withdrawals or other financial transactions accomplished by such instruments be in manner and form acceptable to Vanguard. And granted, that would have an implicit reasonableness requirement. But that gets to Judge Thompson's question. Why isn't it reasonable for Vanguard not to accept durable powers of attorney from whatever state, particularly in circumstances where Vanguard can point to at least two red flags that led it, after its initial decision to accept this power of attorney, to change its corporate mind? The reason, Your Honor, is that Vanguard's interrogatory answer in this case expressly states that the reason it released the funds in December of 2015 was because not, Peter, complying with their requirements. So, it's not an issue of whether or not... But that was before it became aware of what it now describes as two red flags. Vanguard has argued on an appeal that there were two technical violations of the Ohio's power of attorney statute, I believe. That's not the issue. Vanguard initially released the funds, actually wrote a check for the funds in early November of 2012, and then stopped payment on that check because of the two, I believe that's what the court is referring to, the two red flags. In December of 2015, Vanguard said, here, if you do X, Y, and Z, which was submit a certification on an attorney letterhead that the power is still in effect, and if you give us directions, we will now release the funds. And in their interrogatory answer, when I asked them, why did you release the funds in 2015? They said, because Knox complied with our policies. So, we don't have to wonder now or worry or question or argue whether their policies were reasonable. We fully agree that the policy they set forth in December of 2015 was reasonable, and it was so reasonable that within 24 hours, Mr. Knox had complied with it, thereby ending this three-year... Vanguard's attorney had gotten involved in 2015, and according to them, they were just trying to put this to bed. And that's actually from their brief at page 18 to 19. And if I may just for a moment, I want to read it because there's where the catch is. They say, although the certification by Peter was by Peter rather than outside counsel, in light of the substantial compliance with Vanguard's request, the involvement of the court, and the role of Peter's litigation counsel, Vanguard concluded that the authority issue was addressed to its satisfaction and made the best distribution. And they cite to the record appendix, volume 1, page 468. You would assume from that description that that was a memo of some sort or an internal communication or something saying we're now satisfied. Page 468 that they cite to is simply a page saying we released the funds. It doesn't say anything about why they released the funds. The only evidence in the record as to why they released the funds in 2015 is their interrogatory answer and another letter sent by the same counsel who wrote the appellate brief in which he said that Peter could have done the same thing in 2012 that he did in 2015 and Vanguard would have released the funds. Counsel, can I ask you, I guess I'll acknowledge it's kind of an extralegal question, but I have to say I have seldom seen a case where there is such a disproportion between what appears to be the amount at stake and the time and attention lavished on it. What is driving this case? I mean, to me it's extraordinary. I can tell you on the record, but I can't tell you. I'm sorry? The answer won't be in the record. What's part of the case is my client's belief that his father, who was a World War II veteran who was actually on the beaches at Normandy on D-Day, wants this to happen. That's his belief, that his father would be very unhappy if he didn't stand up for his mother's rights. So it's not in the record, I confess. I understand. I guess I asked for that. But that's the emotional thing that's driving this forward. Why didn't he just give Vanguard the forms that they wanted? Excellent question, Your Honor. And the reason has to do with the form of the form. Mrs. Knox actually signed at least two letters to Vanguard saying, please release my money. One was in November of 2012. The other was in February of 2013. And she clearly said in her own, with her signature, I want the money. Just release it. Follow my, in the November 2012 letter, she said just honor the power of attorney. The reason is that if you look at Vanguard's forms, it would be extremely difficult for an elderly person. What Peter says in his affidavit is that I didn't have any confidence that my mother could understand this form. She could understand a simple statement, give me my money. She could not understand a 60-page contract. And he did not feel it was appropriate for him to have her sign it. So that's why he didn't have her. Because most people, frankly, they would have had their mother sign it. They would have held their mother's hand if necessary. But Peter felt that was inappropriate because of the nature of the statement. And I'm over my time, Your Honor. But likewise, he didn't want to proceed with any kind of competency proceedings because he didn't think she was incompetent. That's correct, Your Honor, because that has all kinds of, I don't know if anybody on this panel has dealt with an elderly parent. But there are real complications and consequences of having a parent declared incompetent. And it's not something that you normally want to do unless it's absolutely necessary. And there's nothing in the record, by the way, indicating that Mrs. Knox has ever been declared incompetent. If it helps you, Mr. Markoff, I not only have dealt with elderly parents, but I have become one. I understand that fully. As I said, I can see the window opening myself. Thank you. Good morning, Your Honors. My name is, may it please the Court, my name is William Taylor. And I'm here representing the appellees who I'll refer to collectively as Vanguard. We are here today to ask that Your Honors affirm the District Court's thorough 30-page memorandum and order, which assessed the parties' claims and defenses and correctly concluded that there was an enforceable contract, that Vanguard did not breach it, and that Vanguard cannot be held liable on any other theory of recovery. We therefore respectfully request that this Court affirm the District Court's decision. So Vanguard accepted the durable power of attorney to set up the new account? Yes. So on the forms that were submitted on October 30, 2012, Mr. Knox submitted a, or excuse me, did not submit a durable power of attorney. I'll just make that correction on that date. That submission of the form had been preceded by a conversation on October 2, 2012, in which Vanguard explained its agent authority policies to Mr. Knox. They explained he could use an agent authorization form, which is a durable power of attorney, but it's just a standardized one, or it could submit a, or Mr. Knox could submit his own durable power of attorney that his mother executed, or his mother could sign it herself. He, Mr. Knox, stated in the recorded phone call, I may submit the power of attorney, or I may just have my mom sign it. He then submitted forms with Margaret Knox's signature. There was nothing with that signature to indicate that it was not in fact Mrs. Knox who had signed it, and he did not submit the power of attorney on that occasion. So Vanguard was not on any notice that Mr. Knox was acting on behalf of his mother under that durable power of attorney on that submission. So once you determined everything you just said, why did Vanguard allow the Margaret account to stay in effect? With respect to the events that occurred in November of 2012, I think that's what Your Honor is asking about. The paperwork was submitted, Vanguard opened the account, and it was only after opening the account they realized these concerns and they referred it to their internal fraud department. They then called Mr. Knox and posed certain questions to him, presuming that there would be a constructive dialogue and the parties would get to the bottom of it and resolve the paperwork issues. But at that point, Mr. Knox decided not to comply with Vanguard's request, and so Vanguard wasn't really able to move forward and complete the setting up of the Margaret Knox transaction, but it also couldn't move backwards because it wasn't getting direction from anybody who had authority. And it told Mr. Knox at that time what we would like to occur is that Mrs. Knox discomplete this I-form, which is an eight-page document, which this is about setting up the account. So why couldn't it move backwards? Because the only person who would speak to it and the only person who was reacting to its instructions was Mr. Knox. Counsel did refer to two letters signed by... Why couldn't they return it to the father's account? I mean, what troubles me is that there was an improper procedure, but nonetheless Vanguard allowed mom's account to stay in effect without moving everything back to square one in father's account. So just on the premise of the question, I don't think Vanguard said it never could have moved it back, but it couldn't move it back without the proper authority because as a custodian of the account, it can only act on the direction of someone with proper authority. It couldn't move it forward with proper... It couldn't move it from father's with proper authority either. Sorry, it couldn't move it forward or backwards with... It couldn't move it from father's without proper... In other words, it couldn't set up a beneficiary account without proper authority, yet it did. Correct. It did make the determination once it did so without proper authority not to do anything further. It froze things at that point. And my only qualification to that is when it moved it forward for... It was under the understanding that it had been given instructions by someone with proper authority. So it moved forward at that time period on that basis that there was proper authority. So it was not as if it said, all authority doesn't matter for these eight days, I'm going to do it anyway. It was under the understanding that had been issued directions by Mrs. Knox, because a form submitted on October 30th, 2012 had been signed with a signature that said Margaret Knox. So the overarching theme here is Vanguard did what it did because it had a contract that said it could do what it did. The contract said that Vanguard can request documentation related to a transfer or distribution in a form and manner acceptable to Vanguard. Another provision of the CAA says Vanguard's entitled, this is 4.5D, entitled to ask for further information. And that it is not obligated to make a transfer or distribution unless it gets that direction. So from the outset of this dispute, Vanguard sought to ensure that Mrs. Knox's assets were protected. And it was protected in circumstances in which it appeared that Mr. Knox may have been acting outside of his authority. And was concerned about that because he had named himself as a beneficiary and had signed documents in his mother's name without indicating that he had done so. And he refused to follow Vanguard's instructions. So instead of cooling the situation down, Mr. Knox made Vanguard more concerned about why when we're trying to get to the bottom of this authority issue is the very person we're speaking to not reacting and addressing our concerns. So the situation, as my brother attorney said, apparently was charged with some real emotion from Mr. Knox where Vanguard was just asking for his contractual rights, or was just seeking to exercise his contractual rights. The district court correctly noted that these facts gave Vanguard a specific basis to suspect fraud. And even Peter Knox agreed in his deposition testimony that Vanguard should implement protective measures when it has concerns about fraud. We're not saying that Mr. Knox was committing fraud, but we pointed out in the record that that was our concern and we needed to take steps to address it. That was both our right under our contracts and our obligation as a third party reacting to an agent's purported instructions on behalf of a principal. The district court also correctly observed that Vanguard's contracts with its customers allow it to require this documentation and the exercise of those rights in these circumstances were appropriate. It is therefore beyond question that Vanguard was acting pursuant to those contracts when it actively tried to resolve its concerns regarding the existence and scope of Peter Knox's authority by asking Peter Knox and his mother Margaret Knox to follow certain paperwork requirements. Notably, Peter provided absolutely no evidence that Vanguard had any ill motive, that it had any goal here other than to get to the bottom of what was happening with these instructions. Vanguard was always up front with the Knox's by explaining its concerns and it set forth what its paperwork requirements were and repeated those to the Knox's again and again. Indeed, even in November 2012, when the situation was percolating and starting to escalate, Vanguard wrote to the Knox's and said, look, we're worried that if you don't resolve this, there's going to be tax problems. Please resolve it. Even with that plea, the Knox's decided, and particularly Peter Knox, decided not to provide the paperwork that Vanguard requested. Do you want to submit on the briefs or do you want to practice your oral argument? I would be happy to address any further points from your arms, but if there are no further questions, then I would be comfortable resting on Vanguard's briefs. Thank you, Your Honor, for my brief rebuttal. How was Chandler and Judge Sullyan saying that? In any disagreement you ever have with Judge Thompson, she learned it from you. I'm staying out of this one. My brother said that Vanguard was seeking to protect Mrs. Knox's money. This is nonsense. The money left by Kenneth was in a market fund. One of the things Peter did was take it out of the market fund. When Vanguard reversed the transaction, they put it back into a market fund. By coincidence, the market went up from 2012 to 2015. I don't think Vanguard is going to take the position that people who are 90 years old should be putting their money in a stock market account. The idea that they protected it was, frankly, silly. They say that Vanguard has no ill motive. We've noted in our brief that at one point, right after he had one of his conversations with Vanguard, Peter Knox sent an email to Vanguard complaining about it and also put a notation on, I guess it's like an internet bulletin board they have, complaining about the interaction. One of the first things that Vanguard mentioned in a memo they drafted in November of 2012, as all this is going on, is they commented on the critical remarks that Mr. Knox had made. To say that there's no ill motive, I think, is truly a stretch. They also, in their brief, accused Mr. Knox of threatening Vanguard employees, but I think it's just nonsense. There was clearly people at Vanguard who were upset with Mr. Knox's tone. I'm not making defenses for that, but that's not a reason to hold money for three years. Finally, on one issue that we have not addressed yet, but I would direct the Court's attention on the question of whether or not the IRA constitutes an independent trust, apart from any contract. I direct the Court to Blankenship v. Liberty Assurance Company. It's cited in our brief. It's a Seventh Circuit case from 2007, and I think it clearly resolves that an IRA is a trust. Thank you.